# AMELIA C. LANDAU, Appellant, v. TRAVELERS INSURANCE COMPANY.

### In Banc, December 18, 1924.

1. **NEW TRIAL:** Weight of Evidence: Insufficient Evidence: Accident Insurance. The granting of one new trial by the circuit court on the ground that the verdict is against the weight of the evidence is conclusive on appeal. If granted on the ground that a verdict for defendant should have been directed, because the evidence was not sufficient to show that the insured's death was due to accidental means, the ruling was fully warranted in this case.

2. **EVIDENCE:** Insured's Statement: Self-Serving Hearsay: Res Gestae. In an action on an accident insurance policy, brought by the beneficiary, where the injuries from which the insured died were received when he fell from a rapidly moving electric car at a high railroad trestle, and the sole issue is whether he voluntarily jumped or accidently fell from the car, a statement made by him when he was reached by the motorman and passengers to the effect that he fell, if so closely connected with the fall and spontaneous as to be competent as *res gestae*, cannot be excluded on the ground that it is hearsay and self-serving.

3. ————: ————: **Res Gestae: Accident Insurance.** No precise rule has been, or can be, formulated by which it may be determined with particularity what statements are part of the *res gestae*. In each case the application of the general doctrine must depend upon its own peculiar facts. In an action on an accident insurance policy wherein the sole issue is whether the insured voluntarily jumped or accidentally fell from a rapidly moving open electric street car, the admissibility of statements made to one of the passengers who reached him a few moments after the fall, to the effect that he fell and did not jump, depends upon whether they were so spontaneous and so related to his fall as to appear to be a by-product of the reaction of his senses to the physical shock engendered by the fall. If the utterances were instinctive or automatic, they are admissible as an exception to the hearsay rule.

4. ————: ————: ————: **Spontaneity: Unwillingness to Talk.** The plaintiff is the insured's daughter, and the beneficiary of accident insurance policies. He was sixty-nine years of age; his wife was dead, and he lived happily with plaintiff, his only daughter. He had taken three or four successive trips, without leaving the car, on an electric street-car line that ran from the city to a lake about fifteen miles distant. The time was June 9th; the car was open at the sides and the seats extended from side to side, and along the outer side ran a footboard. As the car rapidly approached a high

railroad bridge and trestle, he left his seat, moved towards the footboard, and with both hands took hold of the usual supports or handholds; he released his right hand, turned somewhat to the left, and was next seen descending towards the bottom of the ravine, and the sole issue in the case is whether he voluntarily jumped or accidentally fell from the car. When he left the car some of the women passengers screamed; the car was brought to a stop, and backed up to the end of the bridge; the motorman and two passengers got off, walked back across the bridge and started down the embankment towards the insured, who lay motionless at the bottom of the ravine. Some one on the bridge said, "He is dead." In response the insured said, "No, I am not dead." When the motorman reached him he obtained from him, by three successive questions, his name, his place of residence and his telephone number. He then asked, "How did this happen?" The insured replied, "I decided to change my seat in the car." The motorman asked, "Did you fall off, or jump off?" The insured merely nodded his head, but from this the motorman implied that he fell off. One of the two passengers who had accompanied the motorman asked, "Old man, did you jump off or fall off?" The insured said, "I fell off; I went to change my seat." The evidence does not disclose whether he was then suffering pain; great excitement prevailed, but the record gives the distinct impression that he was the least perturbed of any of the persons present, and another impression is that he was unwilling to talk about the cause of his fall. He was carried to the car and made as comfortable as possible, and the same passenger again twice asked him if he jumped off or fell off, and in each instance he just looked at the inquirer, but made no answer. *Held*, that his reluctance in answering negatives the idea of spontaneity in his statements that he fell off, and the exclusion of the statements was within the sound discretion of the trial court.

5. ———: **Res Gestae: Discretion.** There is an element of discretion in the trial court in determining whether unsworn statements offered as part of the *res gestae* are sufficiently trustworthy that they may safely go to the jury.

Citations Pertaining to Subjects of Headnotes: 1, **Appeal and Error**, 4 C. J. par. 2843, and **New Trial**, 29 Cyc. 833; 2, **Accident Insurance**, 1 C. J. par. 303; 3 to 5, **Evidence**: 3, 22 C. J. pars. 535, 549; 4, 22 C. J. pars. 535, 553; 6, 22 C. J. 535.

Appeal from Lincoln Circuit Court.—*Hon. Edgar B. Woolfolk*, Judge.

AFFIRMED.

*John L. Burns, D. E. Killam* and *Abbott, Fauntleroy, Cullen & Edwards* for appellant.

(1) The court erred in holding that the deceased could not recover on account of voluntary exposure to unnecessary danger. Travelers Ins. Co. v. Randolph, 78 Fed. 754; Bateman v. Insurance Co., 110 Mo. App. 452; Smith v. Aetna Life Ins. Co., 56 L. R. A. 273. (2) The evidence, both direct and circumstantial, was insufficient to make an issue for the jury that deceased took his own life. It did not exclude with reasonable certainty every other hypothesis. Reynolds v. Casualty Company, 274 Mo. 96; Griffith v. Casualty Co., 290 Mo. 455. (3) The court erred in excluding declarations of the deceased made immediately after the fall. Ins. Co. v. Mosley, 8 Wallace 403; Halem v. Stove, 54 Mo. 96; Greenley v. Casualty Co., 192 Mo. App. 308. (4) The words "voluntary exposure to unnecessary danger" imply a conscious, intentional exposure—something of which one is consciously willing to take the risk, the danger being known or apparent. Ashenfelter v. Employers' Liability Assur. Corp., 87 Fed. 682, 31 C. C. A. 193; Travelers' Ins. Co. v. Randolph, 78 Fed. 754, 21 C. C. A. 305; Equitable Acc. Ins. Co. v. Osborn, 90 Ala. 201, 13 L. R. A. 267; Fidelity Co. v. Sittig, 181 Ill. 111, 48 L. R. A. 359 (Aff. 79 Ill. App. 245); Commercial Travelers' Mut. Acc. Assn. v. Springsteen, 23 Ind. App. 657; Conboy v. Railway Officials' Acc. Assn., 17 Ind. 62, 60 Am. St. 154, and note; Correll v. National Acc. Soc., 139 Iowa, 36, 130 Am. St. 294, and note; Matthes v. Imperial Acc. Assoc., 110 Iowa, 222; Jones v. U. S. Mutual Acc. Assn., 92 Iowa, 652; Employers' Liability Assur. Corp. v. Anderson, 5 Kan. App. 18; Campbell v. Fidelity Co., 109 Ky. 661; Travelers' Ins. Co. v. Clark, 109 Ky. 350, 95 Am. St. 374, and note; Keene v. New England Mut. Acc. Assn.,

161 Mass. 149; Tuttle v. Travelers' Ins. Co., 134 Mass. 175, 45 Am. Rep. 316; Hunt v. U. S. Accident Ins. Co., 146 Mich. 521, 117 Am. St. 655, and note, 7 L. R. A. (N. S.) 938, 10 Ann. Cas. 449; Johnson v. London Guarantee Co., 115 Mich. 86, 69 Am. St. 549, and note, 40 L. R. A. 440; Price v. Standard L. Ins. Co., 92 Minn. 238; Dillon v. Continental Casualty Co., 130 Mo. App. 502; Bateman v. Travelers' Ins. Co., 110 Mo. App. 443; Jamison v. Continental Casualty Co., 104 Mo. App. 306; Collins v. Fidelity Co., 63 Mo. App. 253; Whalen v Peerless Casualty Co., 75 N. H. 297, 139 Am. St. 695 and note; Thomas v. Masons' Fraternal Acc. Assoc., 64 App. Div. 22, 71 N. Y. Supp. 692; Lehman v. Great Eastern Casualty Co., 7 App. Div. 424, 39 N. Y. Supp. 912 (Aff. 158 N. Y. 689); Duncan v. Preferred Mut. Acc. Assn., 59 N. Y. Super. 145, 13 N. Y. Supp. 630 (Aff. 129 N. Y. 622); Cornwell v. Fraternal Acc. Assoc., 6 N. D. 201, 66 Am. St. 601, 40 L. R. A. 437; U. S. Mutual Acc. Assn. v. Hubbell, 56 Oh. St. 516, 40 L. R. A. 453; DeLoy v. Travelers' Ins. Co., 171 Pa. 1, 50 Am. St. 787; Burkhard v. Travelers' Ins. Co., 102 Pa. 262, 48 Am. Rep. 205; Biehl v. General Acc. Assur. Corp., 38 Pa. Sup. 110; Rebman v. General Acc. Ins. Co., 217 Pa. 518, 10 L. R. A. (N. S.) 957 and note; Carpenter v. American Acc. Co., 46 S. C. 541; Union Casualty Co. v. Harroll, 98 Tenn. 591, 60 Am. St. 873; Miller v. American Mut. Acc. Ins. Co., 92 Tenn. 167, 20 L. R. A. 765; Fidelity Co. v. Chambers, 93 Va. 138, 40 L. R. A. 432; Beard v. Indemnity Ins. Co., 65 W. Va. 283; Bakalars v. Continental Casualty Co., 141 Wis. 43, 25 L. R. A. (N. S.) 1241, 18 Ann. Cas. 1123 and note; Schneiderer v. Travelers' Ins. Co., 58 Wis. 13, 46 Am. Rep. 618; Pierce v. Travelers' L. Ins. Co., 34 Wis. 389; Manufacturers' Acc. Indem. Co. v. Dorgan, 58 Fed. 945, 7 C. C. A. 581; Badenfeld v. Massachusetts Mut. Acc. Assn., 154 Mass. 77, 13 L. R. A. 263 and note; Anthony v. Mercantile Mut. Acc. Assn., 162 Mass. 354, 357, 26 L. R. A. 406, 44 Am. St. 367; Williams v. U. S. Mutual

Acc. Assn., 133 N. Y. 366; Equitable Acc. Ins. Co. c. Osborn, 90 Ala. 201, 13 L. R. A. 267; Whalen v. Peerless Casualty Co., 75 N. H. 297, 298, 139 Am. St. 695 and note; Fidelity Co. v. Chambers, 93 Va. 138, 40 L. R. A. 432; Carpenter v. American Acc. Co., 46 S. C. 541; Travelers' Ins. Co. v. Jones, 80 Ga. 541, 12 Am. St. 270; Slaughter v. Huntington, 64 W. Va. 237; Reidel v. Wheeling Tract Co., 63 W. Va. 522, 16 L. R. A. (N. S.) 1123; Van Pelt v. Clarksburg, 42 W. Va. 218; Hesser v. Grafton, 33 W. Va. 548; Moore v. Huntington, 31 W. Va. 842; Phillips v. Ritchie County Ct., 31 W. Va. 477; Mannon v. Camden Interstate Railroad Co., 56 W. Va. 554; Travelers' Ins. Co v. Seaver, 19 Wall. (U. S.) 531, 22 L. Ed. 155; Diddle v. Continental Casualty Co., 65 W. Va. 170, 22 L. R. A. (N. S.) 779 and note; National L. Co. v. Lokey, 166 Ala. 174. (5) There is a clear distinction between a voluntary act and a voluntary exposure to danger; and, although hidden, unknown or unexpected danger may exist, the exposure thereto without any knowledge thereof does not constitute a voluntary exposure, although the act may be voluntary. Equitable Acc. Ins. Co. v. Osborn, 90 Ala. 201, 13 L. R. A. 267; Fidelity Co. v. Sittig, 181 Ill. 111, 48 L. R. A. 359; Commercial Travelers' Mut. Acc. Assn. v. Springsteen, 23 Ind. App. 657; Conboy v. Railway Officials' Employees' Acc. Assn., 17 Ind. App. 62, 60 Am. St. 154; Payne v. Fraternal Acc. Assn., 119 Iowa, 342; Collins v. Bankers' Acc. Ins. Co., 96 Iowa, 216, 59 Am. St. 367; Travelers' Ins. Co. v. Blark, 109 Ky. 350, 22 Ky. L. 902, 95 Am. St. 374; Collins v. Fidelity, Co., 63 Mo. App. 253; Cornwell v. Fraternal Acc. Assn., 6 N. D. 201, 66 Am. St. 601, 40 L. R. A. 437; De Loy v. Travelers Ins. Co., 171 Pa. 1, 50 Am. St. 787; Burkhard v. Travelers Ins. Co., 102 Pa 262, 48 Am. Rep. 205; Miller v. American Mut. Acc. Ins. Co., 92 Tenn. 167, 20 L. R. A. 765; Continental Casualty Co v Jennings, 45 Tex. Civ. App. 14; Fidelity Co. v. Chambers, 93 Va. 138, 40 L. R. A. 432 and note; Bakalars v. Casualty

Co., 141 Wis. 43, 25 L. R. A. (N. S.) 1241; McNevin v. Canadian R. Acc. Ins. Co., 32 Ont. 284.

*Creech & Penn* and *Jones, Hocker, Sullivan & Angert* for respondent.

(1) The burden rested with the plaintiff to prove accidental death. Brunswick v. Ins. Co., 278 Mo. 165; Griffith v. Casualty Co., 290 Mo. 455; Laessig v. Ins. Co., 169 Mo. 280; United States Fidelity Ins. Co. v. Blum, 270 Fed. 946; Taylor v. Pacific Mutual Life Ins. Co., 110 Iowa, 621; Whitlach v. Fidelity & Casualty Co., 149 N. Y. 45; Fidelity & Casualty Co. v. Weise, 182 Ill. 496; Carnes v. Traveling Men's Assn., 106 Iowa, 281; Merritt v. Acc. Assn., 98 Mich. 338. (2) The facts showed suicide as a matter of law. Brunswick v. Ins. Co , 278 Mo. 173. (3) If an accidental fall is assumed, then the insured voluntarily exposed himself to unnecessary danger. Meadows v. Ins. Co., 129 Mo. 89; Overbeck v. Ins. Co., 94 Mo. App. 453; Bean v. Assurance Corporation, 50 Mo. App. 459; Alter v. Casualty Co., 108 Mo. App. 169; Jamison v. Casualty Co., 104 Mo. App. 313; Dillon v. Casualty Co., 130 Mo. App. 507; Rebman v. General Accident Ins. Co., 10 L. R. A. (N. S.) 959; Diddle v. Casualty Co., 22 L. R. A. (N. S.) 789. (4) There was either suicide or voluntary exposure to unnecessary danger, and hence a directed verdict was demanded. Williams v. Accident Assn., 133 N. Y. 369. (5) The statements of the insured, after his fall, in response to questions, were mere narrative, and no part of the *res gestae*. Barker v. Ins. Co., 126 Mo. 148; Ruschenberg v. Southern Electric Co., 161 Mo. 79; Koenig v. Railway Co., 173 Mo. 721; Redman v. Railway Co., 185 Mo. 11; Hill v. Aetna Life Ins. Co., 150 N. C. 1; Railway Co. v. Pearson, 97 Ala. 111; Railway Co. v. Becker, 128 Ill. 545.

RAGLAND, J.—This is a suit on a policy of accident insurance. The appeal in this case and that in the

case of Landau v. Pacific Mutual Life Insurance Company, 305 Mo. 542, decided at this term, were argued and submitted together. While the issues were slightly dif-ferent in the two cases, the evidence in each discloses subtantially the same state of facts.

As the ground of defendant's liability under the provisions of the policy the petition alleged:

"That the death of the said Morris Rich occurred on or about the 9th day of June, 1919, and resulted solely from bodily injuries effected directly and independently of all other causes through external, violent and accidental means, to-wit:

"The insured was engaged in riding upon a Creve Coeur Lake street car, returning from the lake to the city of St. Louis, at a point about one and one-half miles east of the lake, when and where he attempted to change his seat on the car and stepped into the side passageway of said car, and while being in and upon said passageway and in the act of going from one part of the car to another for that purpose, he accidentally fell from the car, which resulted in the following bodily injuries, to-wit: Badly crushed leg and severe nervous shock and loss of blood, which caused the death of the insured on said 9th day of June A. D. 1919.''

The answer denied that the insured's death was effected through accidental means, but averred that on the contrary it was the result of suicide. An affirmative defense, based on a provision of the policy, was also pleaded, to the effect that the insured's injury and death resulted from voluntary exposure to unnecessary danger.

The jury found the issues for plaintiff and returned a verdict accordingly. On defendant's motion the verdict was set aside and a new trial granted. From the order granting a new trial plaintiff prosecutes this appeal.

Among other grounds set forth in the motion for a new trial it was alleged that the court erred in refusing the instruction in the nature of a demurrer to the evi-

dence, offered by defendant at the close of all the testimony, and that the verdict was against the weight of the evidence. The order allowing a new trial did not specify the ground or grounds on which the new trial was granted. In passing on the motion, however, the court delivered itself orally as follows:

. "This is a $15,000 suit on accident insurance policy. It was strongly urged that the deceased, Morris Rich, met his death by wilfully jumping from a moving street car down over a trestle some twenty feet to his death, and the additional defense that voids the policy, if true, that the deceased voluntarily moved from a place of safety to one of peril, to one of great danger.

"The facts in this case are that this man, Morris Rich, was on a street car, a car not filled with passengers, but where seats could readily be obtained among seats that were of the same construction, the same degree of comfort. That he occupied a seat where he was safe for the greater portion of the time of his voyage or trip over this street car line; that a while, or just before, he approached this trestle from which he fell or leaped, as the case may be, he got up and looked ahead and sat down, and when they were moving over the trestle, or starting over, he was seen to move from his seat, where he was safe, down on to the running board of this car; this running board was out, perhaps, flush, or about flush, with the open way twenty feet to the bottom of this valley that this trestle spanned over the Rock Island Railroad at that point. The evidence was that he turned about on that running board, holding the uprights of the car with each hand, one hand gave away first when his body turned right about, facing from the car or out into the open of this death fall that he was about to take or receive, when he turned the other hand loose from the upright, and was seen to go out with his hands stretched up over his head to his death.

"So the case is made from the witnesses by the plaintiff and defendant, by the evidence in this case from

both sides; most of the witnesses say that he jumped or that he left the car as one will leave a car voluntarily. Under those statements of the witnesses, it is up to the court and jury to say whether or not this man, Morris Rich, met his death by reason of violence from some external cause causing his death. That would seem to be a perplexing proposition of itself to a jury and a court.

"That issue makes a very, very close case as to whether or not the evidence would justify a judgment for the claimant, but when to that issue is added the further issue, the clause in the policy that voids it if a person riding on a steam or electric railway or other vehicles for that matter, leaves a place of safety and voluntarily assumes one of great peril or hazard, unnecessarily assumed, when that is added to the other issue, the court finds it impossible to sustain the verdict, and will set the verdict aside."

From the statement by the court it is not clear whether the new trial was granted on the ground that a verdict should have been directed for the defendant, or on the ground that the verdict was against the weight of the evidence. If on the latter ground, the ruling is conclusive; if on the ground that the evidence was not sufficient to show that the insured's death was due to acidental means (and that was the only ground upon which a demurrer to the evidence could have been sustained), the ruling was fully warranted. [Landau v. Pacific Mut. Ins. Co., supra.] However, certain statements made by the insured immediately following his injury, excluded by the court, would, if they had been admitted, have made a case for the jury on the issue of accident. The witnesses were not entirely clear as to just what the insured said. As best we can gather from the record, however, the material statements made by him were these: "I decided to change my seat in the car" and "I fell off, I went to change seats." These statements were excluded on the ground that they were hearsay and self-serving. The propriety of that ruling

*New Trial.*

was not raised on the record in the Pacific Mutual Insurance Company Case, but it is properly challenged here.

The opinion in the Pacific Mutual Insurance Company Case should be read in connection with this for a statement of the facts generally. Only those will be restated which have an immediate bearing in characterizing the statements in question. While the insured was in the act of falling, or jumping, from the car, some of the women passengers screamed; the car was brought to a stop after it had passed over the bridge and run some two hundred feet. The motorman then backed the car to the end of the bridge, got off and walked back across the bridge, followed by the two passengers, the witnesses De Armas and Blakesly. After crossing the bridge they started down the embankment toward the insured, who lay motionless at the bottom of the ravine. As they were approaching him someone on the bridge said, "He is dead." The insured said, "No, I am not dead." On coming up to him the motorman by three successive questions obtained from him his name, place of residence and telephone number. He then asked, "How did this happen?" The insured said, "I decided to change my seat in the car." The motorman then asked, "Did you fall off, or jump off?" The insured merely nodded his head. From this the motorman implied that he meant that he fell off. De Armas then immediately asked, "Old man, did you jump off, or fall off?" The insured said, "I fell off, I went to change seats." In reply to other questions then asked by De Armas he gave his name and address and handed De Armas an envelope on which his name and address were written; gave the name of his son-in-law, Mr. Landau, and told where he might be found; and gave the name, address and possibly the telephone number of his physician, Dr. Sandperl. After he was carried up to the car and made as comfortable as possible, De Armas again asked him twice whether he jumped off or fell off. In each instance the insured just looked at De Armas, but would not answer.

Appellants contend that the excluded declarations should have been admitted as a part of the *res gestae.* This general statement of what is deemed the ground of admissibility conveys no precise meaning. *Res gestae* is a term of protean significance. It has been applied to so many different and unrelated situations that it has been said that "the difficulty of formulating a description of *'res gestae'* which will serve for all cases, seems insurmountable." [Cox v. State, 64 Ga. 374, 410.] For the same reason no precise rule has been, or can be, formulated for determining what statements are part of the *res gestae.* "The general doctrine is well enough understood; its application is difficult. It may accurately enough be said that there is no specific rule of precise application. In each case the application must depend upon the particular facts." [Roach v. Great Northern Ry. Co., 133 Minn. 257, 259.] In the instant case the admissibility of the statements excluded by the trial court depends upon whether they were so spontaneous and so related to the insured's fall as to appear to be a byproduct, so to speak, of the reaction of his senses to the physical shock engendered by the fall. If the utterances were thus instinctive or automatic they fall within a well recognized exception to the hearsay rule. The reasons for excepting such statements from the prohibition against hearsay are set forth in a standard text as follows:

"To judicial administration, the automatic is the true. What a declarant asserts, not so much of himself as overborne and forced thereto by overwhelming emotion, the stress of sudden shock or intense pain, the law of evidence assumes to be the fact. That which judicial administration, nervous, as it were, at being deprived of the test of cross-examination, the greatest guaranty for the discovery of truth which the English jurisprudence has as yet been able to devise, fears in connection with such statements is *reflection,* the opportunity for adjusting facts to self-interest, consciously or uncon-

sciously blending the true and false, coloring, distorting and perverting that which is real. In an instinctive automatic utterance, where the declarant speaks from his subjective or soul-mind rather than from the promptings of that which is habit, really conscious, this element of reflection is largely, if not wholly, absent. The speaker is not so much voluntarily declaring himself as instinctively reacting to an outside stimulus. More physically considered, it would rather seem that the transaction is speaking through the declarant than that the latter is consciously talking about the transaction '' [4 Chamberlayne on Evidence, sec. 2983.]

And by Wigmore as follows:

''This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.'' [3 Wigmore on Evidence (2 Ed.) sec. 1747.]

With reference to the same principle the following language of the court in charging the jury in United States v. King, 34 Fed. 314, has been quoted as particularly illuminative:

''There is a principle in the law of evidence which is known as 'res gestae;' that is, that the declarations of an individual made at the moment of a particular oc-

currence, when the circumstances are such that we may assume that his mind is controlled by the event, may be received in evidence, because they are supposed to be expressions involuntarily forced out of him by the particular event, and thus have an element of truthfulness they might otherwise not have. . . . But you are not to give any more weight to a declaration thus made, or any weight at all, unless you are satisfied that it was made at a time when it was forced out as the utterance of a truth, forced out against his will, or without his will, by the particular event itself, and at a period of time so closely connected with the transaction that there has been no opportunity for subsequent reflection or determination as to what it might or might not be wise for him to say."

It should be further said that in order for a statement to fall within the exception it is not necessary that it be precisely contemporaneous with the ocurrence which is supposed to have evoked it (Leahy v. Railroad Co., 97 Mo. 172); nor can spontaneity be denied it merely because it was made in response to a question (State v. Martin, 124 Mo. 514).

In view of the principles just adverted to, the question is: Do the insured's declarations, "I decided to change my seat in the car" and "I fell off, I went to change seats," appear to have been spontaneous, evoked by his fall, and made without premeditation or reflection? They were made at the scene of the occurrence and almost immediately after its happening. The physical shock sustained must have been profound. The evidence does not disclose whether the declarant was then suffering pain; it is probable that sufficient time had not elapsed for the sensory nerves to react to the injury. Great excitement prevailed, but the record gives the distinct impression that he was the least perturbed of any of the persons present. As he lay at the bottom of the ravine and while the motorman and the two passengers were coming down the enbankment toward him, someone on the bridge above said,

"He is dead." He said, "No, I am not dead," and that seems to have been the only statement he volunteered. In thinking of this his first reaction to the situation, one cannot help connecting it in an intangible way with his movements which immediately preceded his fall and which indicated both preparation and deliberation. Another impression conveyed by the record is that the insured was unwilling to talk about the cause of his fall. He readily gave the information asked with respect to his own name, address and telephone number as well as that of his relative and his physician. But in the face of persistent questioning as to what occasioned his fall he either answered meagerly or remained silent. In response to the motorman's first question, "How did this happen?" he said, "I decided to change my seat in the car." But when the motorman pressed him with the further question, "Did you fall off or jump off?" he merely nodded his head. The witness De Armas then took up the interrogation. He asked, "Old man, did you jump off, or fall off?" In response to this the insured answered, "I fell off, I went to change seats." De Armas seems not to have been satisfied with the answer and repeated the question after the insured had been carried up and placed on the car, but got no response. "I asked him, 'Did you fall off?' and he did not answer. 'Did you jump off?' He looked at me and would not answer." The apparent reluctance manifested by the insured in answering questions as to the cause of his fall negatives the idea of spontaneity in connection with the statements he did make relative thereto; on the contrary such statements seem to have been extorted from him in a fashion by his interrogators.

There is some element of discretion in the trial court in determining whether the trustworthiness of unsworn statements, claimed to constitute a part of the *res gestae,* is such that they may safely go to the jury. [Roach v. Great Northern Ry. Co., supra; State v. Ah Loi, 5 Nev. 101; Vicksburg Ry. Co. v. O'Brien, 119 U. S. 99.] After

a careful consideration of all the facts and circumstances attending the making of the statements in question in this case, we are unable to say that their exclusion was not within the exercise of a sound judicial discretion.

The order granting a new trial is affirmed and the cause remanded. *Graves, C. J.,* and *Woodson, David E. Blair,* and *White JJ.,* concur; *James T. Blair, J.,* concurs in result only.