AMELIA C. LANDAU, Appellant, v. TRAVELERS INSURANCE COMPANY.

Court en Banc, October 8, 1926.

1. **ACCIDENT INSURANCE: Jumping or Falling from Car: Conclusion of Witness.** In a suit on an accident insurance policy, where the very heart of the issue to be determined by the jury is whether the insured jumped or accidentally fell from the street car, the court does not err in refusing to permit eyewitnesses to testify that he fell from the car and did not jump or step from it.

2. ———: **Res Gestae: Exclusion: No Exception.** Where no exception was saved to the exclusion of an alleged exclamation of the conductor, made immediately following the insured's fall or jump from the footboard of the street car, that a man had fallen from the car, and where an exclamation of another eyewitness that "a man fell off the car" was stricken out without objection or exception on appellant's part, such rulings are not for review on appeal.

3. ———: ———: **No Showing of Time.** An exclamation of the conductor that a man had fallen from the street car is not admissible as res gestae where there is no showing or attempt to show the time such exclamation was made with reference to the insured's fall or jump from the car.

4. ———: ———: **Statements of Deceased.** In a suit on an accident insurance policy, where the insured stepped upon the footboard of a street car as it was about to cross a high bridge, and either jumped or fell off, and was killed, and wherein the main issue is whether he fell off or jumped off, it is not error to exclude statements made by him while he lay on the ground and when persons from the car reached him after it had stopped and backed up to the bridge—for the reasons stated in Landau v. Travelers Ins. Co., 305 Mo. l. c. 575, 576.

5. ———: **Instruction: Voluntary Exposure: On Footboard of Running Car.** Where an accident insurance policy promises to pay single damages if the insured meets death while on the step of a railway or street-railway car, and also declares that the insurance shall not cover injuries resulting wholly or in part from voluntary exposure to unnecessary danger, it cannot be ruled that the clause relating to voluntary exposure to unnecessary danger has no application while the insured is getting on or off the car or while on its step, but the single indemnity provision merely limits the double indemnity while insured occupies the status of a passenger, and does not license him voluntarily to expose himself to unnecessary danger while getting on or off a street car or while on its step or footboard, and the clause relating to voluntary exposure to unnecessary danger applies to every risk covered by the policy; and hence an instruction telling the jury that if the insured voluntarily exposed himself to unnecessary danger by leaving his seat in a street car and stepping upon its footboard while it was running rapidly, plaintiff cannot recover, is not error, if it otherwise hypothesizes the voluntary exposure to unnecessary danger upon the facts in evidence.

6. ———: ———: **Exposure: Accident.** Where the policy covered all injuries due to accidental causes except those due to voluntary exposure to unnecessary danger by the insured and occurring while he was so exposing himself, an instruction telling the jury that if he did voluntarily expose

himself to unnecessary danger plaintiff could not recover, even though his fall from the car was accidental, and not intentional, is within the terms of the contract, and not error. Although the facts may establish accident, the plaintiff cannot recover if the insured voluntarily exposed himself to unnecessary danger and his injury was due to such exposure.

7. ———: ———: **Confusing Act and Exposure.** The instruction does not confuse voluntary act with voluntary exposure, if it requires the jury to find that the insured unnecessarily and voluntarily went upon the footboard of a rapidly running street car, when he knew it was dangerous to do so, or when the danger was so obvious and so apparent that it should have been known to him.

8. ———: ———: **Necessary and Unnecessary.** Unnecessary danger is danger not necessary to incur. A criticism of instructions that they single out and repeatedly direct the jury to consider whether it was "necessary" for the insured to change his seat in the street car or "necessary" for him to go upon its footboard while it was rapidly running, are without substantial merit, where they do not single out such acts, but detail such acts in connection with other facts, all of which, if found to be true, constitute voluntary exposure to unnecessary danger.

9. ———: ———: **Voluntary Exposure to Unnecessary Danger: Ordinary Care: Wilfulness.** Ordinary care, and not wilfulness or wantonness, is the measure of voluntary exposure to an unnecessary danger.

10. ———: ———: ———: **Contributing to Injury.** Where there cannot be the slightest doubt from the evidence produced that the injured's act in leaving his seat in the street car and getting down upon its footboard while it was rapidly moving caused or contributed to his death, and the only question remaining is whether such act was a voluntary exposure to unnecessary danger, it is immaterial whether the instructions require the jury to find that said voluntary act contributed in whole or in part to his death, or omitted such requirement. Under such circumstances the omission from some instructions of a requirement that the jury find that insured's death was caused wholly or in part by voluntary exposure to unnecessary danger, and the inclusion of such requirement in other instructions, are harmless.

11. ———: ———: ———: **Burden of Proof.** In an action on an accident policy, wherein the main issue is whether the insured jumped or accidentally fell from the footboard of a rapidly moving street car, an instruction which tells the jury that the burden of proof is upon plaintiff to prove that the fall of the insured from the street car was accidental and not intentional on his part, is not error.

Corpus Juris-Cyc. References: **Accident Insurance,** 1 C. J., Section 112, p. 444, n. 39; Section 119, p. 448, n. 60 New, 61, 62; Section 334, p. 505, n. 52, 54; Section 342, p. 513, n. 60; **Appeal and Error,** 3 C. J., Section 728, p. 807, n. 88 New; Section 813, p. 912, n. 95; p. 914, n. 99; 4 C. J., Section 2620, p. 709, n. 26; Section 3031, p. 1048, n. 76; **Evidence,** 22 C. J., Section 543, p. 453, n. 65; Section 597, p. 502, n. 8; **Trial,** 38 Cyc., p. 1679, n. 91; p. 1749, n. 98.

Appeal from St. Louis County Circuit Court.—*Hon. John W. Mc-Elhinney,* Judge.

AFFIRMED.

*Joseph C. McAtee, Don Stevens* and *Abbott, Fauntleroy, Cullen & Edwards* for appellant.

(1) The evidence is ample to establish clearly that the death of Rich was caused by accident. Travelers' Ins. Co. v. Randolph, 78

Fed. 757; Smith v. Aetna Life Ins. Co., 56 L. R. A. 273; Marx v. Travelers' Ins. Co., 39 Fed. 321; Hunt v. United States Acc. Assn., 117 Am. St. 656; Jones v. United States Mut. Acc. Assn., 61 S. W. 490; 14 R. C. L. secs. 435, 436, p. 1256; 1 C. J. secs. 111 to 123, pp. 444 to 450; 40 L. R. A. 432, note; 10 L. R. A. (N. S.) 957, note; 40 L. R. A. (N. S.) 135; 139 A. S. R. 699, note. (2) The policy promises to pay single damages if the insured shall meet death while being on the step of any railway or street railway car, and, therefore, being on such step is insufficient to establish the defense of a voluntary exposure, and the court erred in not so instructing the jury and in giving instructions which permitted the jury to find that being on the steps constituted such defense. Travelers' Ins. Co. v. Randolph, 78 Fed. 765; 1 C. J. sec. 121, p. 450; Dailey v. Masonic Mutual Acc. Assn., 26 L. R. A. 171; Wilson v. Northwestern Mut. Acc. Assn., 55 N. W. 628; Pacific Mut. L. Ins. Co. v. Snowden, 58 Fed. 342; 1 C. J. p. 436; Jamison v. Continental Cas. Co., 104 Mo. App. 306; International Travelers' Assn. v. Votaw, 197 S. W. 237; Bakalars v. Continental Cas. Co., 141 Wis. 43, 25 L. R. A. (N. S.) 1241, 18 Ann. Cas. 1123; Trow v. Ins. Co., 67 Atl. 821; Standard Ins. Co. v. Schmaltz, 66 Ark. 588, 53 S. W. 49, 74 Am. St. 112. (3) Defendant's instructions are in irreconcilable conflict, in this: The jury are advised that the facts establishing accident are sufficient to support a defense under the voluntary exposure clause, and also directs the jury that the same facts do not authorize a verdict for plaintiff though they establish accident. Spillane v. Mo. Pac. Ry. Co., 111 Mo. 565; Hickman v. Link, 116 Mo. 128. (4) While one is voluntarily doing an act, if he unexpectedly falls, the result is an accident, and the instructions are in conflict with this principle. Rowe v. United Comm. Travelers, 4 A. L. R. 1240; Richards v. Ins. Co., 17 A. L. R. 1184; Lickleider v. Traveling Men's Assn., 3 A. L. R. 1300; Western Comm. Travelers' Assn. v. Smither, 40 L. R. A. 653, 85 Fed. 401; Jones v. United States Mut. Acc. Assn., 61 N. W. 490. (5) Defendant's instructions are erroneous because they confuse voluntary act with voluntary exposure, fail to require the jury to find that the danger was threatening, or the probable and natural consequences of the act of deceased. Smith v. Aetna Life Ins. Co., 56 L. R. A. 274; De Loy v. Travelers' Ins. Co., 50 Am. St. 789; Burkhard v. Travelers' Ins. Co., 102 Pa. St. 262, 48 Am. Rep. 205; People v. Rose, 47 N. E. 547; Fuller on Accident and Employers' Liability Insurance, p. 233; Collins v. Ins. Co., 96 Iowa, 216, 64 N. W. 778, 59 Am. St. 367; Travelers Ins. Co. v. Clark, 59 S. W. 7. (6) Whether deceased's activities were or were not "necessary" constitutes no element of voluntary exposure, and the instructions for defendant singling out repeatedly in instructions for defendant that the jury should consider whether it was "necessary" for deceased

to change his seat or "necessary" for him to go upon the steps
are erroneous.   Continental Cas. Co. v. Whitmore, 137 N. E. 567;
1 C. J. 447; Fidelity & Cas. Co. v. Sittig, 181 Ill. 111; Da Rin
v. Casualty Co., 41 Mont. 175, 27 L. R. A. (N. S.) 1164; Williams
v. U. S. Mut. Acc. Assn., 14 N. Y. Supp. 731; Tucker v. Ins. Co., 4
N. Y. Supp. 505, 121 N. Y. 718; Pacific Mut. Life Ins. Co. v. Adams,
112 Pac. 1030; Campbell v. Fidelity & Cas. Co., 60 S. W. 495, 109
Ky. 661; Travelers' Ins. Co. v. Randolph, 78 Fed. 762; United States
Mut. Acc. Assn. v. Hubbell, 56 Ohio St. 516, 40 L. R. A. 453; Leh-
man v. Indemnity Co., 39 N. Y. Supp. 912, 7 App. Div. 424; Miller
v. American Mut. Acc. Ins. Co., 92 Tenn. 167, 20 L. R. A. 765; Keene
v. New England Mut. Acc. Assn., 161 Mass. 149; Williams v.
United States Mut. Acc. Assn., 82 Hun, 269, 31 N. Y. Supp. 343,
133 N. Y. 367. (7)   The instructions for defendant make ordinary
care instead of wilfulness or wantonness the test of voluntary ex-
posure, hence erroneous.   Continental Cas. Co. v. Whitmore, 137 N.
E. 576; Dillon v. Casualty Co., 130 Mo. App. 507; Bateman v. Trav-
elers' Ins. Co., 110 Mo. App. 443; O'Mellia v. Ry. Co., 115 Mo. 212;
Swadley v. Mo. Pac. Ry. Co., 118 Mo. 278; Travelers' Ins. Co. v.
Harris, 178 S. W. 819; Sutherland v. Standard Ins. Co., 54 N. W.
455; Christensen v. National Travelers' Ben. Assn., 194 N. W. 194;
Smith v. Erie Ry. Co., 67 N. J. L. 644, 59 L. R. A. 302.   (8) In-
structions 9, 10 and 11 are fatally defective in failing to require the
jury to find that the voluntary act of deceased in being on the
steps contributed in whole or in part to his death, and Instruction 5
is erroneous because it assumes that said act did contribute. 1 C. J.
sec. 122, p. 450; Fuller on Accident Ins., pp. 241, 242; Aetna v.
Hicks, 56 S. W. 87; Saxton v. Mo. Pac. Ry. Co., 98 Mo. App. 501;
Fetter v. Fidelity & Cas. Co., 174 Mo. 256, 61 L. R. A. 459, 97 Am.
St. 560; Driskell v. Ins. Co., 117 Mo. App. 368; Bankers' Health &
Accident Assn. v. Wilkes, 209 S. W. 235; Hunt v. United States Ac-
cident Assn., 146 Mich. 521, 7 L. R. A. (N. S.) 938, 117 Am. St. 655,
10 Ann. Cas. 449.   (9)   The burden was erroneously placed on plain-
tiff to negative and to overcome the defense of voluntary exposure.
Meadows v. Life Ins. Co., 129 Mo. 129; Farmers Elevator Co. v.
Hines, 294 Mo. 639; Egg Co. v. Mo. Pac. Ry. Co., 257 S. W. 481;
Diehl v. Green Fire Brick Co., 299 Mo. 659.   (10)   The court erred
in excluding exclamations of the bystanders made at the time de-
ceased fell off the car that a man fell off, and erred in refusing to
permit eyewitnesses to testify that the injured man did not "jump"
but "fell" from the car.   11 Encyclopedia of Evidence, p. 318;
Clark v. State, 120 S. W. 181; Shotwell v. Commonwealth, 68 S. W.
404; Fuller v. State, 48 S. W. 183; State v. Foley, 36 So. 885; State
v. Kaiser, 124 Mo. 651; State v. Walker, 78 Mo. 380; May v. Ry. Co.,
284 Mo. 529; Eyerman v. Sheehan, 52 Mo. 221; Kerchof v. Ry. Co.,

155 Mo. App. 70; Musick v. United Rys. Co., 155 Mo. App. 64; Yahn v. City of Ottumwa, 60 Iowa, 429.

*Jones, Hocker, Sullivan & Angert* for respondent.

(1) The facts in this case bring it within the exception of the policy that it shall not cover injuries resulting from voluntary exposure to unnecessary danger. Meadows v. Ins. Co., 129 Mo. 89; Overbeck v. Travelers' Ins. Co., 94 Mo. App. 453; Bean v. Assurance Co., 50 Mo. App. 459; Alter v. Union Cas. Co., 108 Mo. App. 169; Jamieson v. Casualty Co., 104 Mo. App. 313; Dillon v. Casualty Co., 130 Mo. App. 507; Williams v. Accident Assn., 133 N. Y. 369; Glass v. Masonic Accident Assn., 112 Fed. 495; Archibald v. Commercial Travelers, 104 Atl. 792; Garcelon v. Commercial Travelers, 81 N. E. 201; Small v. Travelers Protective Assn., 45 S. E. 706; Rebman v. Ins. Co., 66 Atl. 859; Diddle v. Continental Cas. Co., 63 S. E. 963; Rommel v. Travelers Benefit Assn., 166 N. W. 457; Osgood v. Accident Co., Anno. Cases, 1913 C, 426. (2) The voluntary-exposure clause of policy is not emasculated by the proviso to Clause B (double indemnity benefit) of policy that any accident sustained while getting on or off or being upon the steps of a street car shall be covered for simple indemnity. Ins. Co. v. Electric Light Co., 184 Mo. App. 722; Mossap v. Casualty Co., 137 Mo. App. 402; 32 C. J. p. 1158; 1 C. J. p. 416. Appellant is estopped from so asserting because the case was tried on the theory that the voluntary-exposure clause applied. Allen West Comm. Co. v. Richter, 286 Mo. 691; National Board v. Fry, 293 Mo. 399; Wilson v. Brotherhood Am. Yeomen, 297 Mo. 655; Findlay-Kehl Inv. Co. v. O'Connor, 256 S. W. 798; Brunswick v. Standard Acc. Ins. Co., 278 Mo. 154; Shapiro v. American Surety Co., 259 S. W. 502. (3) The insuring clause of the policy is not in conflict with the voluntary-exposure clause. (4) The test of voluntary exposure was properly defined in the instruction. Alter v. Union Cas. Co., 108 Mo. App. 169; Carrell v. Ins. Co., 139 Iowa, 36; Follis v. Union Cas. Co., 94 Iowa, 435; De Lay v. Travelers Ins. Co., 171 Pa. 1; Garcelon v. Commercial Travelers, 195 Mass. 531; Travelers Ins. Co. v. Jones, 80 Ga. 541; Rebman v. Accident Ins. Co., 66 Atl. 859. Appellant is estopped from asserting that the test of voluntary exposure was improperly defined in defendant's instructions because appellant requested and was given an instruction laying down the same test of voluntary exposure as defined in defendant's instructions. Simpson v. Wells, 292 Mo. 301; Varley v. Columbia Taxicab Co., 240 S. W. 218; Ehrlich v. Mittleberg, 299 Mo. 284; Lowry v. Columbia Cemetery Assn., 189 S. W. 1162; Shapiro v. American Surety Co., 259 S. W. 502; Vogelsang v. Board of Education, 231 S. W. 645; Johnson v. Kansas City Light

Co., 232 S. W. 1094. There was no error in the exclusion of the testimony complained of. State v. Brown, 64 Mo. 371; State v. Sneed, 88 Mo. 141; Leahey v. Fair Grounds Co., 97 Mo. 173; Kansas City v. Boruff, 243 S. W. 167; Fane v. Mo. Pac. Ry. Co., 251 Mo. 13; Melican v. Whitlow Const. Co., 278 S. W. 361; Johaness v. Brecht Co., 274 S. W. 377; Gricus v. United Rys. Co., 291 Mo. 582; Marshall v. Taylor, 168 Mo. App. 240; Gray v. Elevated Ry. Co., 215 Mass. 143; Note to Anno Cases, 1912 C, p. 321.

BLAIR, C. J.—Action upon an accident insurance policy brought by the beneficiary for the death of the insured through alleged accidental means. Trial by jury resulted in a verdict for defendant. The trial court refused to grant a new trial and plaintiff appealed. Our appellate jurisdiction attaches by reason of the amount claimed in the petition.

This is the second appeal in the case. Upon the first trial the jury found for plaintiff. The trial court granted defendant a new trial and plaintiff appealed to this court. Here the order of the court granting a new trial was affirmed and the cause was remanded for another trial. [Landau v. Insurance Co., 305 Mo. 563, 267 S. W. 376.] A companion case, upon a policy of accident insurance written by a different company, was also decided by this court. [Landau v. Pacific Mut. Life Insurance Co., 305 Mo. 543, 267 S. W. 370.] There the same beneficiary recovered judgment for the death of the same insured and we reversed the judgment and remanded the case.

The petition in the case now before us alleged the issuance and delivery by defendant to insured of its contract of insurance whereby it insured him in the principal sum of $10,000 against death from injuries suffered through external, violent and accidental means. In case of death of insured, loss was payable to his daughter Amelia C. Rich (now Landau), the plaintiff. It was alleged that annual renewals, in accordance with the terms of the policy, had increased the principal sum thereof to $15,000. Said policy provided for double indemnity for injury resulting in death through accidental means while insured was a passenger and riding upon a passenger car, etc. The facts attending the injury and death of insured while riding as a passenger upon a street car were set forth and it was alleged that such death resulted through accidental means. Damages were prayed for in the sum of $30,000, together with interest. It was also alleged that defendant had vexatiously refused to pay the amount due under the policy. Ten per cent in addition to the principal sum and a reasonable attorney's fee were prayed for on that account.

Among other things, the answer alleged that insured's death was due to suicide, and that defendant was not liable in any sum, under the terms of the policy, for that reason. It was further alleged

that the provision for double indemnity did not apply in case the insured sustained an injury while being upon the steps of a street-railway car, and that insured was upon the steps of a street car at the time he precipitated himself therefrom. Said answer also pleaded a provision of the policy exempting defendant entirely from liability for injuries or death resulting from voluntary exposure to unnecessary danger and alleged that insured's fatal injuries were so caused. It was further alleged that said policy did not cover injuries received by insured while leaving a moving conveyance and that insured's fatal injuries were caused in that manner and hence that defendant was not liable under the policy. The reply was a general denial.

Morris Rich, the insured, died on June 9, 1919, as the direct result of injuries received in a fall or jump from a moving street car of the Creve Coeur Lake line, near the city of St. Louis. The ultimate issues of fact tried were whether such fall was accidental or was voluntarily brought about by insured with suicidal intent. Also, if such fall was accidental, whether it was the result of voluntary exposure on the part of insured to unnecessary danger.

Insured was sixty-nine years of age. He lived in St. Louis with the plaintiff, who was his only child, and her husband and their infant son. There was evidence on the part of plaintiff tending to show that insured was financially well-to-do, healthy, happy, exceedingly fond of his daughter and grandson, contented with life and an earnest adherent of the Hebrew faith. From such testimony no motive for suicide could be deduced.

Defendant offered testimony tending to show that insured had undergone treatment for syphilis and was threatened with locomotor ataxia and was living in constant dread of that disease and its effects and the disgrace which knowledge of his infliction with such disease and its cause would bring upon him and his family. The purpose of such testimony was to show a motive for suicide.

There was testimony, tending to prove that insured boarded one of the "moonlight" cars of the street car company about noon on the day of his death and, without getting off said car, made two complete round trips between Delmar Garden and Creve Coeur Lake, each round trip consuming about eighty minutes. The crew operating the street car then changed, but insured remained on the car and rode to Creve Coeur Lake a third time and stayed upon the car and started back toward Delmar Garden a third time.

The fatal injuries of insured were received at a bridge over the Rock Island Railroad, known as the Colorado Bridge, at a point about one and one-half miles east of Creve Coeur Lake. As the street car, moving at a speed of fifteen to twenty miles per hour, approached and was about to enter upon said bridge, insured left

his seat, about the second from the rear, and stepped down upon the running board, which extended along the full length of the car and below the floor of the car, and either fell or jumped from said running board. He thereby received injuries which caused his death the same day. The street car was an open or summer car and seated about one hundred passengers. The seats extended clear across the car. Access to any particular seat could only be had from the running board at the right side of the car. Admission to or exit from the car could only be obtained from the right side. A heavy wire screen guard closed the left side. There was no way to change from one seat to another in the car without stepping down upon the running board at the right side, unless one stepped over from one seat to another. Sixteen or seventeen passengers were on the car at the time.

The facts immediately preceding the fall by and fatal injury to insured were testified to at the first trial by certain witnesses introduced by plaintiff. Upon the former appeal we held that, if the new trial was granted upon the ground that a demurrer to the evidence should have been sustained, the trial court's action in granting such a new trial was fully warranted. [267 S. W. page 377, column 1, 305 Mo. l. c. 570.] Upon the second trial and doubtless in view of such ruling, plaintiff did not call any of the eyewitnesses used by her at the first trial. She called conductor Youngblood and one Barbee instead, and defendant called as its witnesses the witnesses used by plaintiff upon the first trial and other witnesses. The testimony of Mrs. Youngblood, a witness used by plaintiff at the first trial, was read to the jury by defendant, as she died subsequent to the first trial.

Conductor Youngblood testified that he was sitting with his wife in the seat next in front of insured. He saw insured get up from his seat and look ahead along the track and then sit down. He got up again and witness warned him that the car was approaching the bridge and that they were in a dangerous place. Insured said he wanted to change his seat. He said insured got up from his seat and stepped down upon the running board of the car facing the car and holding the handles at the end of the seats and made one or two short steps forward and then witness saw "his shoulder go down— give way." Then, "he went down, and his hands in the air." The witness said insured "fell off," but the court struck that out as a conclusion. In answer to the request to show the jury how insured went down, witness said: "When I saw his outside shoulder give way, or give down, why his feet went off and he went off with his hands raised." Witness did not see insured strike the ground beneath and to one side of the bridge.

William H. Barbee was called by plaintiff. The substance of his testimony as to the movements of insured, just prior to the time he fell or stepped off the car, has been correctly stated by plaintiff as follows: "As I looked back I saw the man whom I afterwards found out to be Mr. Rich. He was in the next seat behind the conductor and this lady, the very first seat back of them. I saw him (Rich) arise and step out on the running board. He stepped down with his back away from the car and faced towards the car. He took hold of the regular posts, the handholds or grab irons, as they are termed. After he got down there he proceeded a step forward. When he stepped down he had to hold with both hands. He proceeded forward a step and moved his left hand up to where the right hand was and was going to reach (interruption). The right hand was extended out towards the next grab iron. While the right hand was extended out there in that position I noticed about his body. It was a sudden drop. The right hand, the hand that was outstretched, shot upward. The body dropped. At the time I saw the body drop it was a very sudden drop. The movement of the body was such that it somewhat turned away from the car, not a full turn, but perhaps forty-five degrees, not facing all the way out to the car, but there was a slight turn of the body. When the body turned in the way I have described the left hand had hold of the grab iron until the hand came loose and the body went straight downward."

The testimony offered by defendant need not be detailed. It was substantially the same as that produced by it and by plaintiff upon the former trial. It is sufficient to state that it was of such character as amply to justify the finding by the jury, if it did so find, that insured voluntarily jumped or stepped off the running board of the car while it was entering upon the west end of the bridge, and to warrant a finding that the act of insured in so leaving the car was done with suicidal intent. The testimony offered by defendant was also of such character that the jury could well have found therefrom that insured's death, if not suicidal, resulted from voluntary exposure to unnecessary danger. The interested reader can secure further information concerning the testimony of said witnesses by reading the opinions in this and the companion cases upon former appeal, cited above.

It is contended by plaintiff that the court erred in refusing to permit the witnesses Youngblood and Barbee to testify that insured fell from the car and did not jump or step from it. It appears too clear for argument that the trial court did not err in this respect. The very heart of the question to be determined by the jury was whether insured intentionally jumped or accidentally fell from the car. Why take up all the

**Conclusion of Witness.**

time of the court and jury in having the witnesses describe the car, the seats, the running board, the bridge and its approach and the actions of the insured immediately preceding the instant his body left the running board of the street car, if that question may properly be decided by the jury upon the opinions and conclusions of the eyewitnesses? The cases cited by plaintiff are those where the matter, to which the testimony of the witnesses was directed and upon which their opinions were sought, was of such character that it could not be properly reconstructed by the testimony or be adequately described to the jury as it appeared to the witnesses so that the jury could satisfactorily draw its own conclusion.

The correctness of the court's ruling in excluding the alleged exclamation of the conductor, immediately following insured's fall or jump from the car, that a man had fallen from the car, is challenged. We have carefully studied the record and fail to find that any exception was saved to the exclusion of plaintiff's offer to such testimony, when conductor Youngblood was on the stand. At another place appearing in the record, witness Flynn volunteered the statement that a woman screamed, "A man fell off the car." This was stricken out on defendant's motion, without objection or exception on the part of plaintiff. The point was therefore not properly saved for review in either of said instances.

Res Gestae.

Offers were made to show by witnesses Burnett, the motorman, and one DeArmas that the conductor exclaimed that a man had fallen off the car. Exceptions were saved to the exclusion of such offer. The offers did not include any showing as to the time such alleged exclamations were made with reference to the time of insured's fall or jump from the car. It cannot be said therefore that the offers made included a showing that such exclamation was so close in point of time to insured's leaving the car as to constitute part of the *res gestae*. It is not necessary to enter upon a consideration of the admissibility of such testimony for that reason.

Error is assigned because the court excluded testimony in reference to statements made by insured after he was injured and while he lay upon the ground and when persons on the car reached him after the street car was stopped and backed up to the bridge. The refusal of substantially the same testimony was held not to be error upon the former appeal. [Landau v. Insurance Co., 267 S. W. 379, column 1.] We therefore regard it as unnecessary again to consider the same question.

Plaintiff contends: "The policy promises to pay single damages if the insured shall meet death while being on the step of any railway or street-railway car, and, therefore, being on such step is insufficient to establish the defense of a voluntary exposure, and the court erred in not so instructing the jury and in giving instruc-

315 Mo.—49.

tions which permitted the jury to find that being on the steps constituted such defense.''

Defendant's Instruction 10 is said to be typical of several instructions presenting this alleged vice.

The voluntary-exposure clause provided that the insurance should not cover injuries fatal or non-fatal, resulting wholly or in part from ''voluntary exposure to unnecessary danger.'' The contention seems to be that the voluntary exposure to unnecessary danger clause had no application while insured was getting on or off the car or while on the step thereof, no matter how great and obvious the danger or how unnecessary the exposure. Such construction of the policy is not permissible. We think the single indemnity provision merely limited the double indemnity provided for in Part B while insured occupied the status of a passenger and must be construed as applying the double indemnity only while insured was within the car as such passenger and such double indemnity did not apply while he was in the act of becoming or ceasing to be a passenger. That clause did not license insured, under the protection of single indemnity, voluntarily to expose himself to unnecessary danger while getting on or off the car or while upon its steps. The voluntary exposure to unnecessary danger exception applied to every risk covered by the policy. It applied while insured was a passenger and seated or standing inside of the car, when he was getting on or off the car or standing upon the running board and while pursuing his ordinary habits of life and not exposed to the extra hazards of travel.

It may not be amiss to add that plaintiff's Instruction 4, quoted later in this opinion, submitted this issue to the jury and plaintiff should not now be heard to complain of defendant's instructions of like character.

Again, plaintiff contends that ''defendant's instructions are in irreconcilable conflict in this: The jury are advised that the facts establishing accident are sufficient to support a defense under the voluntary-exposure clause, and directs the jury that the same facts do not authorize a verdict for plaintiff though they establish accident.'' In argument counsel designate defendant's Instructions 9, 10 and 11 as thus offending. All three instructions are quite similar in wording and practically identical in meaning. We quote Instruction 9 as follows:

''And with respect to the question as to whether or not Rich voluntarily exposed himself to unnecessary danger, the jury are instructed that if they find and believe from the evidence that he was a passenger on an electric car; that he was seated upon a seat provided for passengers where he might have remained and been transported with safety and security, so long as he continued to be a passenger on the car; that one side of the car upon which he was rid-

ing was open and had a running board or step running along that side, and that the insured, Morris Rich, while said car was in motion and was upon or approaching an embankment or trestle, got up from his seat and went upon the running board or step of the car and fell from this step or running board and received injuries from which he died; and if you further find and believe from the evidence that it was not necessary that he should go upon this step or running board at that time and place, and that it was dangerous to stand or be where the insured so stood or placed himself, having regard to the structure of the car, the rate of speed at which it was traveling, his age and activity and all the facts and circumstances in evidence, and that a man of ordinary care and prudence would have regarded it as dangerous to so do, and that the risk or danger involved in so doing was known to the insured, or was so obvious and apparent that it would have been known to him by ordinary attention to his surroundings, then you are instructed that Morris Rich voluntarily exposed himself to unnecessary danger within the meaning of the policy and the plaintiff is not entitled to recover, and if you so find the facts your verdict will be for the defendant, even though you may also find that his fall from the car was accidental and not intentional.''

The substance of plaintiff's contention is embraced within the following quotation from her brief:

''An *unintentional* fall from steps where one has voluntarily placed himself is an accident; hence the instructions are erroneous because *they take all the essential, constituent elements of accident and advise the jury to find against the plaintiff who is suing on an accident policy, even though they find that all the essential constituent elements of an accident are proved.*''

The obvious answer to this contention is that the policy covered all injuries or death, due to accidental causes, except accidents due to and occurring while insured was voluntarily exposing himself to unnecessary danger. The parties made the contract that way. It is our duty to construe and enforce it as made. We cannot reproduce the adroit argument made by counsel, but regard it as utterly unsound in view of the terms of the contract of insurance before us.

Another assault upon the instructions is that they ''are erroneous because they confuse voluntary act with voluntary exposure, fail to require the jury to find that the danger was threatening, or the probable and natural conseqeunces of the act of deceased.''

This assault is also directed to instructions similar to Instruction 9 above quoted. Said instructions required the jury to find that insured unnecessarily and voluntarily went upon the running board when he knew it was dangerous to do so or when the danger was so obvious and so apparent that it should have been known to him.

The jury could not possibly have been misled by such instructions into the belief that the verdict should be for defendant if insured voluntarily and unnecessarily went upon the running board, regardless of his exposure to danger in doing so. Of course, insured's exposure to danger had to be voluntary, as well as his act in going upon the running board. Only a tortured reading of the instructions can give them any other meaning.

Instructions 9, 10 and 11 are further criticized because: ''Whether deceased's activities were or were not 'necessary' constitutes no element of voluntary exposure and the instructions singling out repeatedly in instructions for defendant that the jury should consider whether it was 'necessary' for deceased to change his seat or 'necessary' for him to go upon the steps are erroneous.''

Such criticism is without substantial merit. Said instructions do not improperly single out the acts referred to, but detail such acts in connection with other facts to be found, all of which, if found, constituted voluntary exposure to unnecessary danger. Unnecessary danger is danger which it is not necessary to incur. Clearly the voluntary doing of an act, which is not necessary to be done, but which requires exposure to known danger, to which one would not be exposed if such unnecessary act is not done, is voluntary exposure to unnecessary danger. Such conclusion is inevitable and no amount of specious reasoning can overcome its self-evident correctness. We are satisfied that the instructions are not properly susceptible to such criticism.

It is said that ''the instructions for defendant make ordinary care instead of willfulness or wantonness the test of voluntary exposure.'' Counsel give their construction of the words ''voluntary exposure to unnecessary danger,'' as follows:

''The words should properly be construed as referring only to obvious dangers of a real, substantial character, which the insured *recognized,* but to which he nevertheless purposely and *consciously* exposed himself, *intending* at the time to assume all the risks of the situation.''

Instructions 9, 10 and 11 are said to fail most conspicuously to express said rule. We think the instructions substantially measured up even to plaintiff's requirements. Instruction 9, already quoted, is a fair type of all the instructions criticized. It required the jury to find, under all the attending circumstances, that it was dangerous for insured to be upon the running board and would be regarded as dangerous by a man of ordinary prudence and that the danger involved was known to insured or was so obvious that he would have known it by ordinary attention to his surroundings and that insured, without necessity to do so, voluntarily, that is, knowingly and intentionally, assumed such position of danger, before the jury could

find that insured voluntarily exposed himself to unnecessary danger. These instructions are not essentially different in this respect from Instruction 4, given at the request of plaintiff, which was as follows:

"The policy provides that the insurance shall not cover fatal injuries resulting wholly or partly from voluntary exposure to unnecessary danger, and as to this provision of the policy you are instructed that you must be satisfied from the evidence that the deceased went into the danger and received the injury, causing his death as a result thereof, and that while going into the danger the deceased had knowledge of the danger and cause to apprehend it, and that he went into the danger, if any, with the intention to expose himself to it, or you must be satisfied that the risk or danger of injury to him in doing what you may find from the evidence he did was so obvious and apparent as to cause a reasonably prudent man to realize that the doing of what you may find the deceased did was likely to result in injury, and unless you are so satisfied by the evidence, then you cannot find for defendant on account of said provision being in the policy."

The assignment is overruled.

Plaintiff also assigns as error that "Instructions 9, 10 and 11 are fatally defective in failing to require the jury to find that the voluntary act of deceased in being on the steps contributed in whole or in part to his death, and Instruction 5 is erroneous because it assumes that said act did so contribute." A careful reading of Instructions 9, 10 and 11 discloses that they contain no specific requirement of a finding that insured's death was wholly or partly due to voluntary exposure to unnecessary danger. However, plaintiff's Instruction 4 did so require. It does not follow that such omission necessarily constitutes reversible error. There cannot be the slightest doubt in this case that insured's act in getting down upon the running board of the car while it was in motion caused or contributed to his death. No one disputes that the sole issue of fact was the proper characterization of the acts which concededly produced such result. If the act of insured in getting down upon the running board, which concededly caused or contributed to his death, was for the purpose of changing his seat and not with suicidal intent and did not amount to voluntary exposure to unnecessary danger, plaintiff could recover. If said act was for the purpose of committing suicide, plaintiff could not recover. And even though death or injury was not intended by insured, if such act constituted voluntary exposure to unnecessary danger, plaintiff could not recover. There is not and could not be on this record any question about insured's death being caused by voluntary exposure to unnecessary danger, if it be conceded that his act of getting upon the running board constituted voluntary exposure to unnecessary danger. If the jury found that in-

sured's act constituted voluntary exposure to unnecessary danger, such finding determined its finding upon the question of the cause of insured's death, because there is not the slightest doubt that insured's act in getting upon the running board of the car while it was in motion, however that act may be characterized, caused or contributed to his death.

· We therefore hold that the error in failing to require the jury to find in Instructions 9, 10 and 11 that insured's death was caused wholly or in part by voluntary exposure to unnecessary danger was entirely harmless upon the record before us. The same is true of the alleged assumption of such fact in Instruction 5.

Plaintiff contends that the court erroneously placed upon her the burden of overcoming the defense of voluntary exposure. In her Instruction 4 plaintiff did not have the court tell the jury where the burden upon this issue rested. The only other instruction dealing with the burden of proof is defendant's Instruction 6, which reads as follows:

"With respect to the issue as to whether the death of the insured was due to an accidental or an intentional fall, the jury are instructed that the burden of proof is upon the plaintiff. That is to say, unless the plaintiff has proven by a preponderance or greater weight of the testimony that the fall of the insured from the car, which occasioned his death, was accidental and not intentional on his part, then, regardless of the question of voluntary exposure to unnecessary danger, the jury will find for the defendant.

"And so, if the jury find that his fall from the car was intentional and not accidental, or if under the evidence the jury are unable to ascertain whether it was accidental or intentional, your verdict must be for the defendant."

A reading of said instruction sufficiently answers plaintiff's contention. Nor can it be said that the instruction permits the jury to measure probabilities as suggested in plaintiff's brief. This assignment is overruled.

A full and careful reading of the entire record has convinced us that the verdict of the jury was clearly for the right party. There is strong evidence tending to prove that insured's death was the result of suicide; but if such evidence be deemed inconclusive, in view of the facts and circumstances in evidence, the finding is amply justified upon the ground of voluntary exposure by insured to unnecessary danger. The act of a man of insured's age in going upon the running board of a rapidly moving street car, when it was approaching and about to pass over a bridge, particularly after he had been warned of the danger in so doing, as appears from the testimony offered by plaintiff, appeals to the average man as nothing short of foolhardiness. We are unable to see how an honest, intelligent and

unbiased jury could have failed to find that insured's death was at least due to his voluntary exposure to unnecessary danger.

Counsel have cited an array of authorities which we have not deemed it necessary to notice, for the reason that, in our judgment, they are not applicable to the instructions to which most of them are cited. That is to say, we think counsel for plaintiff have misconceived the import and effect of the instructions and have cited authorities to show that the instructions as thus misconceived are erroneous. As we do not agree with counsel as to the meaning of the instructions, no occasion arises to discuss the controlling authority of the cases cited in support of the contention of error in such instructions as thus misconceived.

The case was well tried. The instructions were clear and fair and we think no prejudicial error was committed in the giving of any of them. All of the rulings upon the evidence, which have been properly brought before us for review, appear to be correct. The verdict rendered appears to be the result of a fair and deliberate consideration by the jury of all of the evidence.

The judgment entered upon the verdict should be and is affirmed. All concur, except *Graves, J.*, absent.