S. P. LAREY v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—64 S. W. (2d) 681.

Division One, October 19, 1933.*

*NOTE: Opinion filed at May Term, 1933, August 3, 1933; motion for rehearing filed; motion overruled August 24, 1933; motion to transfer to Court en Banc filed; motion overruled at September Term, October 19, 1933.

*Carl S. Hoffman, Cooper, Neel, Kemp & Sutherland* and *Frank J. Rogers* for appellant.

*Charles A. Orr, Harry G. Kyle* and *Hume & Raymond* for respondent.

HYDE, C.—This is an action for damages for personal injuries, sustained when plaintiff's Model T. Ford met defendant's switch engine on a grade crossing. Plaintiff received a verdict for $11,500, and from the judgment entered thereon defendant appealed. Before the introduction of any evidence, plaintiff dismissed all the charges of primary negligence and announced that he expected to go to the jury on the humanitarian rule. Defendant does not contend that plaintiff failed to make a submissible humanitarian case, but assigns error only concerning the action of the trial court in giving and refusing instructions. We will, therefore, state the facts which the evidence of each party tends to prove. [Rule 6, Supreme Court.]

Plaintiff's evidence tends to prove that he was driving east on Twelfth Street, in Kansas City, under the Twelfth Street viaduct and, having missed the place where he intended to go upon the lower deck of the viaduct, he decided to drive back east to it. To do so he drove on across the railroad tracks, running under the viaduct, turned around one of the south supporting columns of the viaduct at the east edge of the tracks, and then started back across the tracks in a northwesterly direction. When he first drove east across the tracks he looked south and saw a switch engine "standing there headed south." When he turned around the column and started back west he looked south again "and that switch engine was apparently standing in the same place" as before, forty or fifty feet

south of the south edge of the crossing. Plaintiff drove across the tracks in low gear at the rate of three or four miles an hour. When the front wheels of his automobile reached the track, upon which the switch engine was, he looked up and saw the tender of the switch engine within three feet of him. At that time, he was about fifteen feet from the north edge of the crossing. This street crossing was seventy-three feet wide and was paved with brick with boards between the tracks. Plaintiff's evidence further tended to show that his car was struck by the back end of the tender of the switch engine, which was backing north across the crossing pulling three cars; that it was pushed off the crossing and up the track, over some switches, about thirty-five feet north of the north edge of the crossing; and that his car did not turn over nor was he hurt until it was pushed off of the crossing onto the switches. The accident happened in March, about noon; there was a cold wind blowing from the north; plaintiff had side curtains with isinglass windows on his automobile; and there was a storm curtain at the back of the cab of the switch engine. Plaintiff's evidence also tended to show that no bell or whistle was sounded by the switch engine; that there was no crossing flagman at the crossing; that the switch engine was traveling at four to eight miles per hour; that it could have been stopped in eight feet (defendant's engineer said it was stopped in that distance but later changed his testimony to thirty feet); that when the switch engine approached the crossing the fireman was sitting on the east side, the engineer on the west side and a switchman was standing on a foot board at the rear of the tender; and that none of them gave him any warning. Plaintiff put defendant's engineer and fireman on the stand and also introduced their depositions. Their evidence was somewhat contradictory.

Defendant had some evidence tending to prove that plaintiff's car was traveling about twenty miles per hour, about three times as fast as the switch engine; that the view of the fireman on that side of the switch engine was obstructed, in approaching the crossing, by a two-story switch shanty so that he could not see plaintiff's car until it came out from behind this shanty; that the whistle was blown on the switch engine; that its bell was ringing; that there was a flagman at the crossing waving a stop sign in front of plaintiff and blowing a police whistle; and that the fireman and others yelled at him to stop, but that he drove onto the track in front of the switch engine without looking toward it. The evidence of defendant's engineer and fireman also tends to prove that at the time plaintiff started west over the tracks, about thirty feet from the track on which he was struck, the rear end of the tender of the switch engine was fifteen feet north of the south edge of the crossing; that it was then about thirty feet from the point where it struck plaintiff's automobile so that the engine and the automobile traveled the same distance in the

same time; that the switch engine, and cars, could not have been stopped in less than thirty feet and was stopped in that distance; and that plaintiff's automobile was only pushed partly over the north edge of the crossing.

Defendant assigns as error the giving of plaintiff's Instruction No. 1. This instruction, after hypothesizing the facts concerning the approach of the automobile and the switch engine toward the crossing, authorizes a verdict for plaintiff if the jury finds those facts "and that plaintiff was approaching a position of imminent peril, upon said track, if so, and that plaintiff was oblivious to his danger, if so, and that the said agents and servants of the defendant in charge of the operation of said switch engine negligently drove or caused or permitted said switch engine to be driven into violent collision with the automobile plaintiff was driving after they saw, or, by the exercise of ordinary care, could have seen plaintiff in a position of imminent peril on or approaching said railroad tracks over which said switch engine was being operated, if so, and that they saw or by the exercise of ordinary care could have seen plaintiff was oblivious to his danger, if so, and that they could thereafter, with the appliances at hand and with reasonable safety to themselves, by the exercise of ordinary care, have sounded a warning of the approach and movement of said switch engine in time to have avoided the accident, if so, and that they could thereafter by the exercise of ordinary care, with the appliances at hand, and with reasonable safety to themselves, have slackened the speed of said switch engine in time to have avoided the collision, if so, and that they could thereafter by the exercise of ordinary care, with the appliances at hand and with reasonable safety to themselves, have stopped said switch engine before striking the plaintiff's automobile in time to have avoided the collision, if so, and that they negligently failed to sound a warning, to slow down and stop said switch engine, if so, and as a direct result thereof said switch engine struck the automobile operated by plaintiff and plaintiff suffered any injuries, if so."

Defendant's contentions about this instruction are as follows:

"(a) Said instruction erroneously submits the hypothesis that the fireman could have stopped the engine and sounded the whistle and bell, which is contrary to and unsupported by the evidence and also submits the hypothesis that the engineer could see the plaintiff as he approached the tracks, which is unsupported by and contrary to the evidence.

"(b) Said instruction erroneously submits failure to warn as negligence and a cause of plaintiff's injury.

"(c) Said instruction erroneously fails to limit the failure to warn and to slow down and stop the engine to that time after plaintiff reached a position of peril.

"(d) Said instruction fails to submit the question of whether or not plaintiff was in a position of imminent peril from being struck by defendant's engine, but assumes that he was in such position of peril when he was either on or approaching the tracks in question, without having the jury find such to be the fact."

■ Defendant's first contention is based on the use in the instruction of the plural term "agents and servants." This has been held harmless. [Kloeckener v. St. Louis Public Service Co., 331 Mo. 396, 53 S. W. 1045; Meng v. St. Louis & Suburban Ry. Co., 108 Mo. App. 553, 84 S. W. 213; Christiansen v. St. Louis Public Service Co., 333 Mo. 408, 62 S. W. (2d) 828.] Furthermore, the matter was clearly and definitely limited to the duty of each specific employee by defendant's instructions hereinafter set out.

■ Defendant's contention concerning the failure to warn is that the evidence shows that there was no time to warn. This, however, was for the jury; and, also, that a warning would have done no good, since plaintiff testified that he saw the switch engine and knew it was there. Plaintiff's testimony, however, was that he did not know it was moving. If it was standing still when plaintiff first saw it and later started up (or even after moving slowly speeded up) as the jury had a right to find from the evidence, a warning would have served some purpose. Moreover, defendant itself submitted the question of a warning in its Instruction No. 15 hereinafter referred to.

■ As to the contention that plaintiff's instruction failed to limit the acts of negligence hypothesized to the time after plaintiff came into a position of peril and that it did not submit the question of whether plaintiff was in a position of peril but assumed that he was, it may be conceded that plaintiff's instruction could have stated these essential requirements of the humanitarian doctrine more clearly and definitely. However, although, perhaps, stated indefinitely, the jury was required to find all these essentials in regard to plaintiff's imminent peril. When we look to instructions given at the request of the defendant, however, we find that any of these requirements not clearly and definitely stated in plaintiff's instruction are made clear, definite and certain beyond all question. ■ It is well settled that all instructions must be read and construed together; that where a series of instructions thus taken together contain a complete exposition of the law and cover every phase of the case, there is no prejudicial error; and that when taken and construed together, they harmonize and clearly and specifically require the finding of all essential elements, then any indefinite, ambiguous and misleading language in the plaintiff's instruction is thereby cured. [Hughes v. C. & A. Ry. Co., 127 Mo. 447, 1. c. 542, 30 S. W. 127, 128; Owens v. K. C., St. J. & C. B. Ry. Co., 95 Mo. 169, 8 S. W. 350, 6 Am. St. Rep. 39; State ex rel. Jenkins v. Trimble, 291 Mo. 227, 236 S.

W. 651; Krelitz v. Calcaterra (Mo.), 33 S. W. (2d) 909; Neal v. Caldwell, 326 Mo. 1146, 34 S. W. (2d) 104; Acker v. Koopman (Mo.), 50 S. W. (2d) 100; Smith v. Southern Ill. & Mo. Bridge Co., 326 Mo. 109, 30 S. W. (2d) 1077; Schultz v. Schultz, 316 Mo. 728, 293 S. W. 105; Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 279 S. W. 89; Emory v. Emory (Mo.), 53 S. W. (2d) 908; McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. (2d) 37.]

█ Looking to the instructions given upon defendant's request we find that, by Instruction No. 2, the jury were told that: "You must not permit any sympathy for either of the parties to this suit, or any prejudice against either party to this suit to come into your minds or influence your verdict."

By Instruction No. 4, the jury were told that: "The mere fact that the automobile in which plaintiff was riding at the time in question, came in contact with the defendant's engine, or tender, if you so find, and plaintiff received injuries," did not authorize a verdict for him.

By Instruction No. 5, they were further told that: "If the defendant's servants in charge of the engine in controversy, exercised all the care and prudence that were reasonably practicable, then there was no negligence."

By Instruction No. 6, they were told that plaintiff had the burden of proof and that they must find for defendants "unless . . . plaintiff has proven by a preponderance of all the credible evidence in the case, to the satisfaction of the jury, that the injuries complained of were caused by the carelessness and negligence of the employees and servants of the defendant."

By Instruction No. 7, they were warned and cautioned as follows:

"That the law does not require of a man operating an engine, as Mr. Birt, the engineer, and the fireman, Mr. Haverty, were at the time and place in question, to accomplish the superhuman; or is the test as to whether an engineer and fireman exercises ordinary and reasonable care, to be considered in the light of subsequent events occurring after the occasion in question; the only care required of said engineer and fireman, was that an ordinarily prudent and ordinarily careful engineer and fireman would exercise under the stress of the exigencies of the situation as it presented itself actually on the ground;" and if they "acted with that degree of care that an ordinarily careful engineer and fireman would have used in the emergency when it arose" defendant was entitled to the verdict.

By Instruction No. 12, they were told that they should find for the defendant if they believed that:

"The plaintiff drove the automobile in which he was riding, on to the railroad track in question, from the fireman's side, so closely in front of a moving engine and tender, that the engineer operating said engine, and the fireman, acting with ordinary and reasonable care,

and with the appliances at hand, and under the conditions then existing, did not have time, nor opportunity, after said automobile got on the railroad track, if you so find, or after it would have been apparent to a reasonably careful fireman and engineer, under like or similar circumstances, to have anticipated that said automobile was going to proceed into a place of danger in front of said engine, if any, and if you so find, to have operated and handled said engine so as to have avoided a collision with said automobile.''

By Instruction No. 15 they were further told that they should find for the defendant if they believed:

''Upon the defendant's fireman, Mr. Haverty, becoming aware (if you so find) that plaintiff, Mr. Larey, was in, or about to go into a position of peril from the approach of the tender, engine and train, mentioned in the evidence, and was oblivious thereto, said fireman, Mr. Haverty, and defendant's engineer, Mr. Birt, used ordinary and reasonable care (such as would be used by an ordinarily careful fireman and engineer, acting under like or similar circumstances), to slacken the speed of said engine, or to stop same, or give warning of approach, before plaintiff was injured, and to prevent same, and were unable, in the exercise of such care, under the circumstances and conditions then existing, to do so.'' They were further informed by the same instruction to ''consider any warning, if any, given plaintiff by the flagman or anyone else on or near said crossing'' in connection with the question of warning plaintiff.

Thereafter, it would seem that assurance was made doubly sure that the jury should consider nothing else, except what was or could have been done after plaintiff reached a position of imminent peril by Instruction No. 18, which was as follows:

''The court instructs the jury that *any and all evidence introduced in this case* as to any acts of the engineer in operating and handling the engine in question, or acts of the fireman or any others of defendant's train crew, or as to whatever the engineer or fireman or others of the train crew was doing or not doing, prior to the time that the automobile in which plaintiff was riding came into a position of imminent peril of being struck by said engine, *is withdrawn from your consideration* as, under the law applicable to this case, and under the pleadings in this case, *same is immaterial* and cannot be the ground for any recovery in this case, *and must not be considered by you* in arriving at your verdict.''

We can hardly conceive of how human ingenuity in the use of the English language could more clearly advise the jury that defendant could only be liable for negligent acts of defendant's engineer or fireman committed after plaintiff's imminent peril arose. These instructions certainly leave defendant no room to complain of an unfavorable submission of this question.

■ Defendant also complains of the refusal of the court to give its Instruction No. 3, stating that:

"The engineer and fireman operating the engine in question, had a right to expect that any people proceeding over the crossing in question would use ordinary and reasonable care by looking and listening to ascertain if any train or engine was approaching and that they would not go upon said track in close proximity to any approaching train or engine."

This was an instruction requiring consideration of plaintiff's antecedent negligence, which should never be done in a humanitarian case. [Millhouser v. Kansas City Public Service Co., 331 Mo. 933, 55 S. W. (2d) 673; Wolfson v. Cohen, 55 S. W. (2d) 677; Freeman v. Berberich, 332 Mo. 831, 60 S. W. (2d) 393.] The court properly refused it.

■ Defendant also complains that the court erred in refusing its Instruction No. 10, as follows:

"The court instructs the jury that in this case, in no event, would the plaintiff be entitled to recover anything by way of attorneys' fees."

Our system is to tell the jury what issues are in the case rather than to tell them what issues are not. Under special circumstances various kinds of cautionary instructions may be given, but even proper cautionary instructions are not a matter of right. They are discretionary with the court. [Wolfson v. Cohen (Mo.), 55 S. W. (2d) 677; Derrington v. Southern Ry. Co., 328 Mo. 283, 40 S. W. (2d) 1069; Aronovitz v. Arky (Mo.), 219 S. W. 620; Huss v. Heyd' Bakery Co., 210 Mo. 44, 108 S. W. 63; Johnson v. St. Louis & Suburban Ry. Co., 173 Mo. 307, 73 S. W. 173.] The court did not err in refusing this instruction.

■ Defendant also complains that the court erred in refusing its Instruction No. 11, as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that the plaintiff knew that the engine and tender mentioned in the evidence was closely approaching the crossing in question, and that he knowingly and purposely tried to beat said engine and tender across said crossing, in front of same, and failed to do so, then plaintiff is not entitled to recover in this case, and your verdict will be for the defendant."

This instruction is based on speculation and conjecture and not on evidence. Defendant's evidence, as well as plaintiff's, was that plaintiff did not see the switch engine coming and never even looked toward it. The matter of plaintiff driving in front of the engine too late for the engineer or fireman to do anything was fully covered in Instructions Nos. 12 and 15, hereinabove referred to, and, disregarding the suggestion it made as to plaintiff's intention, this instruction merely presented practically the same defense in different

language. We, therefore, hold that it was not error for the court to refuse this instruction.

Defendant further complains that the court erred in refusing its Instructions 13 and 14, both of which told the jury that even though defendant's fireman and engineer were guilty of the acts (failing to warn, slacken speed or stop when in the exercise of ordinary care they could have done so and avoided striking him) which would constitute negligence under the humanitarian rule (even after plaintiff was in a position of imminent peril and oblivious thereto), nevertheless, they must find for the defendant if plaintiff "thereafter, had time and an opportunity, by the exercise of ordinary care for his own safety, to have avoided getting on said railroad track in front of said engine and tender (if you so find) and have avoided being injured, and negligently failed to do so;" or "could have, by the exercise of ordinary care, taken action and so conducted his automobile and/or himself, so as to have avoided injury to himself and negligently failed to do so." The least these instructions would do, would be to make an issue of plaintiff's contributory negligence. which is never proper in a humanitarian case. As said in the Millhouser case, 331 Mo. 933, 55 S. W. (2d) l. c. 675-676:

"There was nothing for the jury to consider in this case except whether defendant was negligent under the humanitarian doctrine. as stated in plaintiff's instruction. . . . Negligence of plaintiff in going into or being in a position of peril creates no exception to the humanitarian rule (or, we may here add, in attempting to get out of it). The very essence of that rule is to exclude the negligence of the one invoking it. When the humanitarian rule begins to operate, all prior and antecedent negligence of either party goes out of the case, and the sole question left is the ability of the defendant to prevent the injury under the then conditions. . . .

"Plaintiff's negligence, or that of the driver of the automobile is no defense to defendant's negligence where plaintiff's case is based on a violation of the humanitarian rule, and an instruction on plaintiff's negligence has no place in the case. The only defense in a case properly submitted on the humanitarian rule is to disprove one or more of the basic facts on which that rule rests."

Instructions Nos. 13 and 14 would really take the humanitarian doctrine out of the case. They, in effect, tell the jury that even though the defendant was guilty of every conceivable kind of neg ligence in violation of the humanitarian doctrine, yet plaintiff cannot recover if he could have in some way extricated himself from his position of imminent peril. These instructions were in conflict with the other instructions of both plaintiff and defendant, and they were also self contradictory because one could hardly have been in a position of imminent peril, oblivious thereto and yet by ordinary care for his own safety (or by anything he would intentionally do)

avoid injury. He could, under such conditions, escape injury only by the most fortuitous circumstances, more commonly called "lucky breaks." These instructions could only have misled the jury as to the real issues. They were correctly refused.

Defendant's final assignment of error is that the court erred in refusing its withdrawal Instruction No. 17, withdrawing all charges of primary negligence made by plaintiff's petition. It is difficult to see why such an instruction would be required since plaintiff dismissed all charges of primary negligence and announced his election to stand solely upon the humanitarian doctrine, before any evidence was received and before the opening statements of counsel were made. By reading the record, we see that the court fairly held the evidence to that issue; and the instructions authorized a recovery only upon that theory. Furthermore, defendant's Instruction No. 18 withdrew, not merely charges of primary negligence from the jury, but withdrew "all evidence introduced in this case as to any acts of the engineer . . . fireman or any others . . . prior to the time that the automobile in which plaintiff was riding came into a position of imminent peril," and told them "same is immaterial . . . and must not be considered." This was more favorable to defendant than it was entitled to have: [Heibel v. Ahrens (Mo.), 55 S. W. (2d) 473, and cases cited; see, also, Martin v. St. Louis-San Francisco Ry. Co., 329 Mo. 729, 46 S. W. (2d) 149; Davis v. Bucks Stove & Range Co., 329 Mo. 1177, 49 S. W. (2d) 47.] Defendant, therefore, cannot complain. Our impression from the whole record is that defendant had a fair trial free from prejudicial error.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.